## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE GONZALEZ,** | : | **No. 4:22cv1237** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SUPERINTENDENT of SCI-FOREST** | : | |
| **and PENNSYLVANIA OFFICE OF** | : | |
| **ATTORNEY GENERAL,** | : | |
| **Respondents** | : | |

## MEMORANDUM

On August 9, 2022, Jose Gonzalez filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"). (Doc. 1).  Before the court is a Report and Recommendation ("R&R") from United States Magistrate Judge Martin C. Carlson recommending that the petition be denied as untimely. (Doc. 15).  On April 29, 2025, petitioner filed objections to the R&R. (Doc. 16).  The R&R is thus ripe for disposition.

**Facts and Procedural History**

Petitioner is presently incarcerated at State Correctional Institution, Forest located in Marienville, Forest County, Pennsylvania.  He is serving a 20-to-40-year sentence for attempted homicide resulting in serious bodily injury and aggravated assault.  A jury convicted the petitioner, but he contends that his brother committed those crimes and that he has proof of his actual innocence.

Petitioner's convictions stem from the shooting of Jose Martinez on April 8, 2012, in Lebanon, Pennsylvania at the residence of Magdalena Cruz.[1]  Cruz and the petitioner had been partying at a drinking establishment with several other people, including the petitioner's brothers, Anthony DeJesus and Derek DeJesus. When the bar closed, the group went to Cruz's apartment to continue the party. At some point, Jose Martinez and two others arrived at Cruz's apartment.

An argument then ensued between Martinez and Cruz over a cell phone. Cruz later testified at trial that it was the petitioner's cell phone. The argument escalated and Cruz slapped Martinez. Martinez shoved Cruz.  Anthony and Derek DeJesus began fighting with Martinez at the top of a staircase.  They scuffled, Martinez was shot, and Martinez fell to the bottom of the stairs. Martinez survived but was paralyzed from the waist down as a result of being shot.

At petitioner's trial, Martinez testified that, after he was shot, and while laying at the bottom of the stairs, he observed the petitioner holding a silver gun. During the trial, Martinez testified that he was a "100 percent" certain that the petitioner was the one holding a gun.  Martinez testified that he observed

---

[1] These background facts are derived from the trial court opinion denying the petitioner's post-trial motions and from the transcript of petitioner's criminal trial. (See Doc. 14-6, Trial Court Opinion (citing relevant portions of the trial transcript); Doc. 14-10, Transcript of Trial Proceedings 08/08/2013 & 08/09/2023).

petitioner holding this gun "half a second" after hearing a gunshot.  Cruz testified that Anthony DeJesus yelled "Mookie" after the gunshot.  "Mookie" is the petitioner's nickname.

Following the shooting, Anthony DeJesus and another individual dumped Martinez off at a hospital and drove away.  Other partygoers scattered.  No one called the police. Cruz cleaned up her apartment.

Police, however, eventually determined that Martinez was shot at a party at Cruz's house and identified the people who were at the party.  When interviewed, these individuals were uncooperative.  For example, Anthony DeJesus told police that he did not even remember being at the party.

The police interviewed those present at Cruz's apartment within 2 or 3 days of the incident, except for the petitioner.  The police could not locate him and his whereabouts were unknown for approximately nine months.  When apprehended and questioned, the petitioner denied being at the party.

In addition to Martinez's statements to police that petitioner possessed a gun at the scene and was the only person he saw with a gun, authorities also discovered petitioner's Facebook communications with a friend of his.  Petitioner messaged this friend on April 18, 2012, referencing a "hammer."  This friend indicated that he had disposed of the "hammer" during communications with the petitioner.

3

After a two-day trial in April 2013, a jury deliberated for 14 minutes before finding the petitioner guilty. On August 28, 2013, the trial judge, the Honorable Bradford H. Charles of the Lebanon County Court of Common Pleas, sentenced the petitioner to an aggregate sentence of 20-40 years of incarceration.

Petitioner appealed his conviction and sentence to the Superior Court of Pennsylvania, challenging, among other things, the sufficiency of the evidence against him. Commonwealth v. Gonzalez, No. 299 MDA 2014, 2014 WL 10752293, at *1 (Pa. Super. Ct. Dec. 22, 2014). The Superior Court deemed Martinez's testimony, the petitioner's flight, and petitioner's Facebook messages with a friend regarding the "hammer" as sufficient evidence to convict. Id. at *4-*6. The Superior Court affirmed petitioner's conviction and sentence on December 22, 2014. Id. Petitioner did not seek further direct review. Instead, petitioner began to collaterally attack his conviction.

## 1. First PCRA Petition

On November 25, 2015, petitioner filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541–9546. (Doc. 14-6, at ECF pp. 1-3). The PCRA court appointed counsel on petitioner's behalf, conducted a hearing, and denied all of the petitioner's various

4

claims except one.[2] <u>Commonwealth v. Gonzalez</u>, No. 1815 MDA 2016, 2017 WL 2782017, at *4-*6 (Pa. Super. Ct. June 27, 2017) (attaching PCRA court opinion).

Petitioner's innocence claims shifted from the time of trial to the time of his PCRA hearing. The PCRA court noted in its analysis that:

> The Defendant told police that he was not even present at the party. On most occasions the Defendant told his own counsel that he was not present at the party. Today he attempts to alter that paradigm to indicate that he was present at the party, but did not pull the trigger. Today he claims an unnamed individual known as "Dinero" was the shooter.

<u>Id.</u> at *4.

Petitioner appealed to the Superior Court of Pennsylvania. The Superior Court affirmed. <u>Id.</u> at *1-*4. The Supreme Court of Pennsylvania denied a subsequent petition for allowance of appeal on December 13, 2017. <u>Commonwealth v. Gonzalez</u>, 176 A.3d 843 (Table) (Pa. 2017).

## 2. Second PCRA Petition

Approximately eighteen (18) months passed following final disposition of the first PCRA petition. Then, on April 16, 2019, petitioner's brother, Anthony

---

[2] Plaintiff argued that his trial counsel rendered ineffective assistance for not appealing the decision of the Superior Court after it affirmed his conviction and sentence. The PCRA court granted petitioner leave to file a *nunc pro tunc* petition for allowance of appeal to the Supreme Court of Pennsylvania. Nonetheless, the *nunc pro tunc* petition for allowance of appeal was denied on April 12, 2017, meaning the Supreme Court of Pennsylvania did not consider petitioner's direct challenge of conviction and sentence. <u>Gonzalez</u>, 2017 WL 2782017, at *1, n. 3.

DeJesus signed a statement indicating that he, not the petitioner, shot Jose Martinez. (Doc. 14-1, ECF p. 13). Based on this statement, the petitioner filed a second PCRA petition on June 28, 2019. Following a hearing, the PCRA court determined that the second PCRA petition was time-barred and did not merit relief after concluding from the evidence that DeJesus's recent confession was a fabrication.

The Superior Court affirmed the denial of this second PCRA petition, concluding that "the record support[ed] the PCRA court's finding that [petitioner's] testimony was incredible[.]" Commonwealth v. Gonzalez, 253 A.3d 275 (Table), 2021 WL 1346260 at *4 (Pa. Super. Ct. 2021). The Superior Court also found that petitioner "failed to prove reasonable due diligence in discovering the asserted new fact of the DeJesus confession presented to the PCRA court." Id. at *5.

As for the new facts presented by DeJesus's written statement, the PCRA court reasoned that if DeJesus's confession was actually the truth, petitioner would have known DeJesus was the shooter well before the second PCRA petition was filed. Id. at *4–*5. Per the Superior Court, the petitioner failed to demonstrate error in the PCRA court's rulings. Petitioner sought allowance of appeal with the Supreme Court of Pennsylvania regarding his second challenge to his conviction and sentence under the PCRA petition. The Supreme Court of

6

Pennsylvania denied that petition on August 31, 2021. <u>Commonwealth v.</u>

<u>Gonzalez</u>, 669 Pa. 406, 407, 262 A.3d 454 (Table) (2021).

On August 9, 2022, petitioner then filed the instant petition for writ of

habeas corpus pursuant to Section 2254. (Doc. 1).  Respondents filed their

response to the petition on October 25, 2022.[3] (Doc. 9).  Petitioner filed a

traverse on November 15, 2022. (Doc. 12). Magistrate Judge Carlson issued the

R&R on April 15, 2025.[4] (Doc. 15).  Petitioner has filed objections to the R&R in a

timely manner. (Doc. 16).  On May 7, 2025, respondents then filed a brief in

response to the objections, (Doc. 17), which brings this Section 2254 petition to

its present posture.

**Legal Standard**

When a party files objections to a magistrate judge's report and

recommendation, the district court must make a *de novo* determination of those

portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C);

Fed. R. Civ. P. 72(b)(3); <u>see also</u> <u>Henderson v. Carlson</u>, 812 F.2d 874, 877 (3d

Cir.1987). This court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge. The district court

---

[3] On December 20, 2024, respondents filed documents in support of their opposition. (Docs. 14-1 to 14-14).  Those documents are the only documents of record in this case.

[4] This matter was assigned to the Honorable Sylvia H. Rambo and referred to Magistrate Judge Carlson.  On August 30, 2024, this matter was transferred to the undersigned upon Judge Rambo's retirement.

may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

**Analysis**

In the R&R, Magistrate Judge Carlson here recommends that the court deny the petition as barred by the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), 28 U.S.C. § 2244(d)(1). (Doc. 15 at 12).  Additionally, the R&R concludes that petitioner failed to demonstrate actual innocence or other exceptional circumstances which would justify equitable tolling of this limitations period.

Petitioner's objections to the R&R, as filed by counsel, are the same arguments he raised in his traverse. (Compare Doc. 12 to Doc. 16).   The first objection disputes petitioner's role as the person who shot Martinez and claims that his brother, Anthony DeJesus, was the shooter. (Doc. 16 at 1–2). Petitioner's second objection is to the "facts and procedural history." In this objection, petitioner copies a section from his traverse almost verbatim.. (Compare Doc. 12 at 1–4 to Doc. 16 at 2–5).  The third objection asserts that petitioner's habeas petition is timely because it raises new, reliable evidence of actual innocence.  This objection is the clearest instance of petitioner copying an entire section from his traverse into his objections.  (Compare Doc. 12 at 4–9 to Doc. 16 at 5–10).  Nonetheless, a district court is required to review timely written

8

objections to an R&R using a *de novo* standard, even if they only rehash arguments previously presented to and considered by a magistrate judge. <u>Brown v. Astrue</u>, 649 F.3d 193, 195 (3d Cir. 2011).

If a petitioner has not objected to certain portions of the R&R, however, then in deciding whether to adopt those portions, the court must determine if a review of the record evidences plain error or manifest injustice. FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); <u>see also</u> 28 U.S.C. § 636(b)(1); <u>Sullivan</u>, 723 F.2d at 1085.

Here, petitioner's objections do not challenge several critical conclusions reached in the R&R. First, Magistrate Judge Carlson concludes that petitioner's Section 2254 petition is facially untimely. (<u>See</u> Doc. 15 at 2). Similarly, petitioner does not object to any of the legal standards discussed by the magistrate judge including the law relative to Section 2254 petitions, the levels of deference afforded to state courts, or the statutory tolling periods as provided by the AEDPA. <u>Id.</u> at 12–20.

Among other things, petitioner also does not object to any portion of the R&R concluding that the evidence he presents of his actual innocence is "implausible[,]" "contradicted in a host of ways[,]" and "remarkably unlikely[,]" <u>id.</u>,

9

as well as "riddled with…inconsistencies[,]" id. at 8.  Furthermore, petitioner does not object to the finding that DeJesus's "alleged confession was conveniently timed to exculpate his brother, [the petitioner], only after the statute of limitations had run on DeJesus'[s] potential culpability." Id. at 8.  Likewise, petitioner offers no objection to the magistrate judge's conclusions that "the well-supported state court factual findings…are fatal to this tardy federal habeas petition." Id. at 25.  Finally, petitioner does not object to Magistrate Judge Carlson's discussions about all of the equitable interests which weigh in favor of holding the petitioner to the limitations period prescribed by law. Id. at 26.

Thus, the court need not make a *de novo* review of these determinations.  Seeing no evidence of plain error or a manifest injustice, those conclusions will be adopted.  That leaves only three points remaining for consideration as raised in petitioner's objections to the R&R: 1) his reference to the COVID-19 pandemic equitably tolling his petition, which he did not raise in his petition; 2) his actual innocence evidence; and 3) the impact of a state decision, Commonwealth v. Yale, 249 A.3d 1001 (Pa. 2021), on this federal habeas petition.

**1. Equitable Tolling**

The AEDPA's one-year limitations period is subject to the doctrine of equitable tolling.  Martin v. Adm'r N.J. State Prison, 23 F.4th 261, 272 (3d Cir. 2022) (citing Holland v. Florida, 560 U.S. 631, 645-49 (2010)).  Application of this

doctrine, however, occurs "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice," and must be determined on a case-by-case basis. Id. (quoting LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005)) (alteration in original) (further citation omitted). "A petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some extraordinary circumstance stood in his way.' " Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006)(quoting Pace, 544 U.S. at 418). "This conjunctive standard requires showing **both** elements before [courts] will permit tolling." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012)(emphasis added).

As for diligence, the level required is "reasonable diligence, not maximum, extreme, or exceptional diligence." Ross v. Varano, 712 F.3d 784, 799 (3d Cir. 2013)(citing Holland, 560 U.S. at 653). But mere excusable neglect is not sufficient. LaCava, 398 F.3d at 276. Additionally, "[d]etermining whether a petitioner has exercised reasonable diligence is a fact-specific inquiry and, again, depends on the circumstances faced by the particular petitioner." Martin, 23 F.4th at 273 (cleaned up). This requirement "applies not only to a petitioner's filing for federal habeas relief, but it also extends to the steps that the petitioner takes to exhaust available state court remedies." Id. (citing LaCava, 398 F.3d at 277).

The petitioner cannot demonstrate reasonable diligence. His first PCRA petition was, for all intents and purposes, unsuccessful. The Superior Court of

Pennsylvania affirmed the PCRA court on June 27, 2017.  The Supreme Court of Pennsylvania denied the subsequent petition for allowance of appeal on January 23, 2018.

Furthermore, his second PCRA petition was determined to be untimely by the state courts.  Because the second PCRA petition was untimely, it was not "properly filed," 28 U.S.C. § 2244(d)(2), and thus did not toll the time for his Section 2254 petition, Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (quoting Carey v. Saffold, 536 U.S. 214, 226 (2002) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)); Wallace v. Mahanoy, 2 F.4th 133, 149 (3d Cir. 2021) (holding that petitioner's PCRA petition was not "properly filed" for statutory tolling purposes because the state court had dismissed the petition as untimely and federal courts must "afford deference" to that decision).  Thus, this Section 2254 petition was filed many years after the deadline imposed by 28 U.S.C. § 2244(d)(1).  To the extent that petitioner needed to exhaust state court relief, he did not avail himself of the option of filing a protective Section 2254 petition in federal court and then hold that matter in abeyance while he pursued his second PCRA petition. See Pace, 544 U.S. at 416–17.

Second, as to the COVID-19 pandemic and extraordinary circumstances, it did not cause any widespread restrictions until March 2020.  At that point,

12

petitioner was litigating his second, untimely PCRA petition.  The PCRA court denied his petition on March 9, 2020.  The Superior Court addressed his appeal on its merits despite the appeal being untimely due to delays caused by the pandemic. Gonzalez, 2021 WL 1346260 at *1–*2 & n. 5.  Accordingly, petitioner received some form of relief due to the pandemic in state court, but even then, his second PCRA petition was determined to be untimely.

The pandemic did not create extraordinary circumstances regarding this federal habeas petition.  Petitioner's objections to the R&R fail to explain how the pandemic prevented him from filing a timely habeas petition in this court. See Ross, 712, F.3d at 803 (explaining that a petitioner must show "a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition").  Thus, petitioner cannot demonstrate extraordinary circumstances to warrant equitable tolling.  His objection related to COVID-19 tolling will be rejected.

### 2. "Actual Innocence"

Petitioner also asserts that he has evidence of his actual innocence.  The Supreme Court has held that a convincing claim of actual innocence will overcome Section 2244's limitations period. McQuiggin v. Perkins, 569 U.S. 383 (2013).  The actual innocence test requires the petitioner to supplement his claim with new, reliable evidence of factual innocence. Schlup v. Delo, 513 U.S. 298,

324 (1995).  This is an exacting standard. <u>See</u> <u>McQuiggin</u>, 569 U.S. at 394-95 (quoting <u>Schlup</u>, 513 U.S. at 329) ("The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' "); <u>see also</u> <u>Sistrunk</u>, 674 F. 3d at 191 ("Proving actual innocence…requires petitioner to demonstrate (1) new evidence; (2) this is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner.").

Petitioner's evidence is not "new."  As indicated above, the PCRA court determined that, based on the evidence, petitioner would have known of his brother's desire to state he shot Jose Martinez more than one year before the second PCRA petition was filed.  <u>Gonzalez</u>, 2021 WL 1346260 at *4.  Judge Charles reasoned:

- [Petitioner] and Anthony DeJesus were both present at the party where the shooting occurred.  We consider it to be extremely unlikely if not impossible that neither would have known the identify of the shooter that evening…

- Even though [petitioner] and Anthony DeJesus have been incarcerated in different state penitentiaries, they continued to communicate with each other "a lot" via mail.  Mr. DeJesus testified at the PCRA hearing that he "probably" told his brother that he was the shooter more than one year prior to the shooting.

14

> Given the above circumstances, we conclude that if in fact
> Anthony DeJesus was the actual shooter, [petitioner]
> would have known this fact well prior to June of 2018.

(Doc. 14-11 at ECF p. 10).

"There is a 'presumption of correctness' for determinations of a factual issue made by the state court and the petitioner has the burden of rebutting said presumption by 'clear and convincing evidence.' " <u>Williams v. Superintendent Greene SCI</u>, 112 F.4th 155, 164 (3d Cir. 2024) (citing 28 U.S.C. § 2254(e)(1)). Petitioner has offered nothing clear and convincing about the newness of his brother's written statement.

The PCRA court, after a hearing, also determined that DeJesus's ostensible confession was "incredible" and "a fabrication." <u>Gonzalez</u>, 2021 WL 1346260 at *1, *4.   Similarly, there is nothing clear and convincing about the reliability of DeJesus's statement.  Moreover, after review, Anthony DeJesus's statement cannot be reconciled with his own testimony at petitioner's trial, Jose Martinez's testimony about observing the petitioner with a gun after he was shot, the petitioner's flight from Lebanon, Pennsylvania after the shooting, or evidence that the petitioner and a Facebook friend discussed concealing and destroying "hammers."  Petitioner's evidence is thus unreliable.[5]

---

[5] Magistrate Judge Carlson also observed that DeJesus did not implicate himself in the shooting until after the five-year statute of limitations for attempted murder and aggravated

Petitioner also cannot demonstrate that DeJesus's statement was so probative of innocence that no reasonable juror would have convicted him. Another partygoer, Lawrence Graves, told a jury that the petitioner did not shoot Jose Martinez. (Doc. 14-10, Trial Trans. 109:3-15).  Another witness, Tiffany Koziara, testified that she did not see petitioner at the party. (Id. 162:19-20). Anthony DeJesus also testified that his brother, the petitioner, was not at the party and did not have a gun at the party. (Id. 167:25–168:4).  Furthermore, DeJesus testified that he himself did not have a gun at the party. (Id. 168:22-23).

In 2013, a jury did not credit any of the above exculpatory testimony provided on the petitioner's behalf, including the testimony from Anthony DeJesus.  DeJesus's inconsistent written statement from 2019 is not probative of petitioner's innocence.  It cannot be said that no reasonable juror would have convicted the petitioner with the addition of this statement.   Therefore, the petitioner's objection will be overruled.

### 3. Change in State Law

Finally, petitioner's references Commonwealth v. Yale, 249 A.3d 1001 (Pa. 2021) in his objections to the R&R.  He argues that he would not have been convicted if the trial court had followed Yale.  The Commonwealth contends that

---

assault passed. (Doc. 16 at 8 (citing 42 PA. CONS. STAT. § 5552)).  Petitioner did not object to that finding.  Seeing no plain error, the court also adopts this finding of unreliability.

this attempt to rely on <u>Yale</u> is frivolous.  The court will not go that far but agrees that <u>Yale</u> merits the petitioner no relief.

Petitioner's trial counsel sought to suggest to the jury in his closing argument that petitioner's brother, Anthony DeJesus, was the one who shot Martinez, based on DeJesus's prior convictions for aggravated assault and possessing a firearm despite being disqualified. <u>Gonzalez</u>, 2014 WL 10752293 at *7.  Regarding that issue, the trial court prevented petitioner's counsel from making a direct link between DeJesus's firearms conviction and the shooting because the evidence did not establish any such link. <u>Id.</u>

Pursuant to <u>Yale</u>, evidence of a third person's crimes, wrongs or other acts "lies outside the contours of [Pennsylvania Rule of Evidence] 404(b) when introduced by a criminal defendant." 249 A.3d at 1021–22. (citation omitted). Rather, the admissibility of third person guilt evidence is governed by relevance considerations under Pennsylvania Rule 401 and, if relevant, whether the probative value of such evidence is outweighed by any danger that issues would be confused or a jury would be misled under Pennsylvania Rule 403.

Judge Charles prevented petitioner from drawing a direct link between Anthony DeJesus's previous firearms conviction in his closing argument and his identity as the shooter. (Doc. 14-10, Trial Trans. 203-207).  The Commonwealth argued that such evidence was not probative. (<u>Id.</u> 203:7-203:15).  As indicated

17

above, the trial court indicated the lack of a link between DeJesus's conviction and the shooting in the evidence. (Id. 206:3-15).  Such evidence was thus not precluded under Pennsylvania Rule 404(b), but under "the traditional inquiries prompted by [Pennsylvania's] rules of evidence." Yale, 249 A.2d at 1022. Consequently, the trial court's ruling, made 8 years prior to Yale, squares with that holding.

Critically, "[a] state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution or laws or treaties of the United States." Engle v. Isaac, 456 U.S. 107, 119 (1982).  Petitioner's reference to Yale and the trial court's ruling on third-party guilt evidence under the state rules of evidence does not demonstrate a deprivation of the petitioner's federal rights.  Consequently, this objection will also be overruled.

**Conclusion**

For the reasons set forth above, petitioner's objections to Magistrate Judge Martin C. Carlson's R&R will be overruled.  The R&R will be adopted in its entirety.  The petition for a writ of habeas corpus under Section 2254 will be dismissed as barred by AEDPA's statute of limitations.  Petitioner has not established any basis for tolling this limitations period.

A certificate of appealability will also be denied.  The petitioner has failed to make a substantial showing of the denial of a constitutional right, see 28 U.S.C. §

2253(c)(2), or that "jurists of reason would find it debatable" whether this court's

procedural ruling is correct, <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

    An appropriate order follows.

Date: _6/20/25_

BY THE COURT:

_____

JUDGE JULIA K. MUNLEY
United States District Court